## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NAQUIBA SHARDAN GILLIS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  22-3362** |
| | : | |
| **NORRISTOWN STATE HOSPITAL** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                **May 15, 2023**

African American woman Naquiba Shardan Gillis pro se sues her former employer Norristown State Hospital for allegedly violating federal and Pennsylvania civil rights laws by discriminating against her based on her race and sex in summer and fall 2018 leading to her eventual termination. She also alleges her former employer harassed and retaliated against her on the basis of race and sex. Her former employer now moves to dismiss. She did not timely respond. We liberally construe her pro se allegations. But we must still dismiss her Pennsylvania Human Relations Act claim with prejudice as the Hospital is immune from suit as a state institution under the Eleventh Amendment. We dismiss her hostile work environment and retaliation claims under federal law without prejudice to allow Ms. Gillis to timely amend if she can plead facts supporting these claims. Ms. Gillis may now proceed on her claim of disparate treatment relating only to the Hospital's January 10, 2019 decision to fire her while it issued a warning to a white man allegedly engaging in the same conduct.

## I.    Pro se alleged facts.[1]

Norristown State Hospital hired Ms. Gillis on February 26, 2018 as a forensic security employee trainee.[2] The Hospital gave her a written reprimand approximately five weeks later on April 4, 2018 with a final warning for unauthorized absence.[3] Ms. Gillis continued working for the

Hospital before she ran into a series of incidents beginning in September 2018 through December 2018 and eventual termination.

### *The prostitution rumor.*

Supervisor Nicole Bonetz called Ms. Gillis to her office on September 27, 2018 for a meeting with union president John Napper.[4] Supervisor Bonetz told Ms. Gillis she "wasn't in any trouble and this isn't a discipline action against [her]."[5] Supervisor Bonetz told Ms. Gillis someone reported her "doing sexual favors for money."[6] Supervisor Bonetz told Ms. Gillis if she found out the "rumors" are true, Ms. Gillis would be terminated because such activity constitutes prostitution and criminal charges would be filed against her as a state employee.[7] Ms. Gillis  reported Supervisor Bonetz's harassment for the sex worker comment to the State Employee Assistance Program on an unpleaded date.[8] An unidentified person told her an investigation would be performed but she never heard back.

### *Incident with co-worker and patient.*

Ms. Gillis worked a scheduled shift on October 17, 2018. An undescribed incident occurred between one of Ms. Gillis's co-worker and a patient.[9] Ms. Gillis witnessed the incident and the Hospital later questioned her in connection with its investigation of the incident.[10] The Hospital coerced her into amending her witness statement because some unidentified investigator told her video footage of the incident contradicted Ms. Gillis's original witness statement.[11] But the video footage did not contradict her original witness statement.[12]

### *Supervisor Bonetz warns Ms. Gillis about performance issues.*

On November 22, 2018, Supervisor Bonetz began rounds on the unit where Ms. Gillis worked.[13] A new supervisor, Rochelle Galen, accompanied Supervisor Bonetz. Supervisor Bonetz asked Ms. Gillis why she did not have the ward keys, why she did not sign out the radio log, and

2

why she did not make sure all staff signed out of their radios.[14] Ms. Gillis told Supervisor Bonetz she forgot to do these tasks, attributing her mistake to having worked a double shift.[15] Supervisor Bonetz—in the presence of Supervisor Galen and another employee, John Paul Jovin—responded to Ms. Gillis: "I could be a bitch and write you up. I'm going to put a note on your file as an official counseling. You have been warned."[16] Supervisor Bonetz's "I can be a bitch and write you up" remark offended Ms. Gillis.[17] Supervisor Bonetz returned to the unit later in the day to harass Ms. Gillis.[18] But Ms. Gillis does not plead the form of this later harassment.

### *Ms. Gillis considers resigning.*

Ms. Gillis obtained a resignation form on December 1, 2018, intending to resign from employment.[19] Another supervisor, Patrick Ellison, gave Ms. Gillis the resignation form and she completed it, giving two weeks' notice until December 14, 2018.[20] Supervisor Ellison asked Ms. Gillis of her certainty in her decision to resign, telling her "he can send it to HR right now via fax."[21] Ms. Gillis reconsidered and told Supervisor Ellison she wanted a few days to think about whether she wanted to resign.[22] Ms. Gillis does not allege discriminatory, harassing, or retaliatory conduct relating to this episode.

### *Supervisor Bonetz's comments on scheduling.*

On December 8, 2019, Supervisor Galen scheduled an "all call" for the 3-to-11 shift.[23] Ms. Gillis had already been scheduled to work the 11-to-7 shift. Ms. Gillis accepted the "all call" and cancelled her 11-to-7 shift.[24] Supervisor Galen expressed doubt as to whether Ms. Gillis could cancel her shift and told Ms. Gillis she would leave a note for Supervisor Bonetz regarding the scheduling change.[25] When Supervisor Bonetz learned of the shift change, she told Ms. Gillis she "would not hire" her for the 3-to-11 shift because she needed more people on the overnight 11-to-7 shift.[26] Supervisor Bonetz warned Ms. Gillis not to cancel her 11-to-7 shift, threatening if Ms.

Gillis did so, Supervisor Bonetz "will make [Ms. Gillis] pay for it on the 3-to-11 shift."[27] Supervisor Bonetz told Ms. Gillis she is the supervisor of the 3-to-11 shift and, as the supervisor, is responsible for staff scheduling and "has the power to put [Ms. Gillis] wherever [Supervisor Bonetz] wants."[28] Ms. Gillis took this as a threat and did not cancel her 11-to-7 shift on December 8, 2018.[29] Supervisor Bonetz returned to the unit later in the day to "watch" Ms. Gillis for the remainder of the day.[30]

Ms. Gillis started to cancel her overtime work to avoid seeing Supervisor Bonetz and called the State Employee Assistance Program a few times asking for help and assistance.[31] Ms. Gillis alleges Supervisor Bonetz did not threaten her co-worker and fellow trainee Michael McCullough, a white male, with a denial of overtime or disciplinary action.[32]

### *Ms. Gillis complains to Supervisor Ellison.*

Ms. Gillis complained to, and sought advice from, Supervisor Ellison about Supervisor Bonetz.[33] Supervisor Ellison told Ms. Gillis "to report it" but there is not much he could do "without it being on paper," and advised Ms. Gillis to talk to a union representative.[34] Ms. Gillis contacted a union representative but expressed her concern about filing a complaint against Supervisor Bonetz for fear of retaliation.[35] Ms. Gillis also contacted the State Employee Assistance Program for help.[36] Ms. Gillis does not allege whether she filed a complaint with the union or State Employee Assistance Program.

### *Pre-disciplinary conference.*

The Hospital scheduled a pre-disciplinary conference with Ms. Gillis for December 14, 2018 to address the October 17, 2018 incident between a co-worker and a patient.[37] The Hospital believed Ms. Gillis provided a witness statement contradicted by video surveillance of the

4

incident.[38] The Hospital found the response Ms. Gillis provided at the pre-disciplinary conference "not acceptable."[39]

### *Ms. Gillis files an internal complaint against Supervisor Bonetz.*

Ms. Gillis filed an "official" report with Debbie Isenhart complaining about Supervisor Bonetz.[40] Ms. Gillis does not allege the substance of her complaint against Supervisor Bonetz. The Hospital began a workplace investigation three days later on January 7, 2019.[41]

### *Supervisor Galen denied Ms. Gillis requested time off.*

Supervisor Galen denied Ms. Gillis's request for time off on January 8, 2019.[42] Ms. Gillis claims Supervisor Bonetz treated her differently than fellow trainee Michael McCullough, a white male, who Supervisor Bonetz never threatened "regarding his overtime or job or … threaten[ed] that he will be written up."[43] There is no alleged nexus between Supervisor Galen's denial of Ms. Gillis's requested time off and Supervisor Bonetz's more favorable treatment of Mr. McCullough.

### *The Hospital terminates Ms. Gillis's employment.*

The Hospital terminated Ms. Gillis on January 10, 2019 for "deliberate concealment and/or misrepresentation of information in the answering of questions during an official investigation."[44] The Hospital did not terminate white man Mr. McCullough although he held the same position as Ms. Gillis, both were trainees, and both committed the same offense but the Hospital only gave Mr. McCullough a write up and final warning but fired her.[45]

### *Ms. Gillis filed complaints with administrative agencies.*

Ms. Gillis completed an "Employment Discrimination Questionnaire" with the Pennsylvania Human Relations Commission on January 30, 2019.[46] Ms. Gillis filed a charge with the Equal Employment Opportunity Commission on February 1, 2019.[47] The Equal Employment Opportunity Commission issued Ms. Gillis a right-to-sue letter on May 25, 2022.[48]

5

## II.  Analysis

Ms. Gillis sued the Hospital. The Hospital now moves to dismiss arguing: (1) it has Eleventh Amendment immunity from claims under the Pennsylvania Human Relations Act; and, (2) Ms. Gillis fails to sufficiently state claims for discrimination, retaliation, and harassment in violation of Title VII.[49] We grant the Hospital's motion to dismiss Ms. Gillis's claims asserted under the Pennsylvania Human Relations Act because the Eleventh Amendment confers immunity from suit in federal court. We grant in part and deny in part the Hospital's motion to dismiss Ms. Gillis's claims under Title VII. Ms. Gillis states a claim for disparate treatment in her termination but fails to plausibly state claims for other incidents of disparate treatment, hostile work environment, and retaliation.

### A.  Eleventh Amendment immunity bars Ms. Gillis's Pennsylvania Human Relations Act claims.

The Hospital first argues the Eleventh Amendment bars Ms. Gillis's Pennsylvania claims against it in federal court. We agree with the Hospital and dismiss Ms. Gillis's Pennsylvania Human Relations Act claims with prejudice.

Federal Rule of Civil Procedure 12(b)(1) permits the dismissal of an action for lack of subject-matter jurisdiction. A challenge to our subject-matter jurisdiction may be either a facial or factual attack.[50] A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint" and requires us to "consider the allegations of the complaint as true."[51]A factual challenge allows "a court [to] weigh and consider evidence outside the pleadings."[52]

The Hospital makes a facial attack on our jurisdiction. We construe the facts in the Complaint in the light most favorable to Ms. Gillis when considering the Hospital's facial attack on our subject-matter jurisdiction.[53] The Hospital argues we lack subject-matter jurisdiction over

6

Ms. Gillis's Pennsylvania Human Relations Act claims because Eleventh Amendment immunity bars her claims. The Eleventh Amendment of the United States Constitution bars a suit against a state by its citizens in federal court.[54] A state may waive its immunity by consenting to a suit against it in federal court. Pennsylvania's General Assembly has not done so, having specifically retained immunity from suits, including actions under the Pennsylvania Human Relations Act, against it in federal courts guaranteed by the Eleventh Amendment.[55]

Norristown State Hospital is a state institution within Pennsylvania's Department of Human Services.[56] The Department of Human Services is "an administrative agency without existence apart from the Commonwealth."[57] As such, Norristown State Hospital is the same as the Commonwealth and is entitled to Eleventh Amendment immunity.[58] Pennsylvania retained its immunity against claims under the Pennsylvania Human Relations Act in federal court.[59]

Ms. Gillis's claims for race and sex discrimination, harassment, and retaliation against the Hospital under Pennsylvania Law in federal court are barred by the Eleventh Amendment. Any amendment to assert claims against the Hospital under the Pennsylvania Human Relations Act in federal court would be futile since the Hospital is immune, so we dismiss the claims with prejudice.[60]

### B. Ms. Gillis states a claim for Title VII discrimination under a disparate treatment theory but not a hostile work environment theory.

Norristown State Hospital next argues the remaining claims under Title VII must be dismissed because Ms. Gillis fails to state a claim for discrimination and harassment.[61] When considering a motion to dismiss a complaint for failure to state a claim, we apply Federal Rule of Civil Procedure 12(b)(6). We accept all factual allegations as true as well as all reasonable inferences to be drawn from them and construe them in the light most favorable to Ms. Gillis to determine whether she states a claim for relief plausible on its face.[62] We must be "mindful of our

7

'obligation to liberally construe a pro se litigant's pleadings.'"[63] We "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it."[64] But "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "they cannot flout procedural rules — they must abide by the same rules that apply to all other litigants."[65]

Congress in Title VII of the Civil Rights Act of 1964 prohibits employers from "[d]ischarg[ing] any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"[66] Discrimination theories under Title VII may include disparate treatment and hostile work environment.[67]

### 1. Ms. Gillis states a claim for Title VII disparate treatment theory.

The "central focus of the prima facie [Title VII] case is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin."[68] In a disparate treatment case, Ms. Gillis must show her employer treated her less favorably than similarly situated employees outside her protected class.[69]

To plausibly allege a Title VII disparate treatment claim, Ms. Gillis must allege: (1) she is a member of a protected class; (2) she is qualified for the position she sought to retain; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances which could give rise to an inference of intentional discrimination.[70]

Ms. Gillis alleges the Hospital discriminated against her on the basis of her race and sex. She alleges the Hospital employed her and Mr. McCullough, a white male, as "trainees," and both committed the same policy infraction, but the Hospital terminated her employment and gave Mr. McCullough only a final warning.[71]

8

At the motion to dismiss stage, we are concerned with facial plausibility. Ms. Gillis plausibly alleges, and we infer from her allegations, she is a black woman qualified for the job, and the Hospital treated her differently than a similarly situated white man by terminating her but only giving him a warning for the same conduct. Accepting this allegation as true, we can reasonably infer Ms. Gillis plausibly alleged discrimination based on a disparate treatment theory. We limit our conclusion only as to Ms. Gillis's termination and not the other complained-of incidents, for example, the prostitution rumor comment and Supervisor Bonetz's performance and scheduling comments. Ms. Gillis fails to allege how her supervisors treated her differently than other similarly situated employees because of her race and sex with regard to the prostitution rumor and scheduling comments. We grant her leave to timely demonstrate disparate treatment based on the prostitution rumor and scheduling comments if she can do so in good faith.

### 2.  Ms. Gillis fails to state a claim for Title VII hostile work environment.

To state a claim for hostile work environment, Ms. Gillis must allege: (1) intentional discrimination because of her race or sex; (2) the discrimination is severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of *respondeat superior* liability, "meaning the employer is responsible."[72]

Ms. Gillis alleges Supervisors Bonetz and Galen harassed her because of race and gender: (1) on September 27, 2018, Supervisor Bonetz called Ms. Gillis to her office to report the "sex worker"/prostitution rumor; (2) on November 22, 2018 (the "I can be a bitch and write you up" comment) and later returned to the unit to "harass" Ms. Gillis; (3) on December 8, 2018 (refusing to allow Ms. Gillis to cancel her 11-to-7 shift in favor of a 3-to-11 shift and the "I'll make you pay

for it" comment) and later returned to the unit to "watch" Ms. Gillis for the remainder of the day;

and (4) on January 8, 2019 when Supervisor Galen denied Ms. Gillis's request for time off.

Accepting these allegations as true, there is nothing from which we may plausibly infer intentional discrimination based on race or sex. There are conflicting allegations regarding the "sex worker" comment. In one section of the Complaint, Ms. Gillis pleads Supervisor Bonetz "accused" her of being a sex worker but in another section, she pleads Supervisor Bonetz, in the presence of a union representative, told Ms. Gillis "someone" reported Ms. Gillis as "doing sexual favors for money" and, if true, it would be grounds for termination.[73] There are no allegations tying this comment to intentional discrimination based on race or gender or how the discrimination detrimentally affected her.

With regard to the November 22, 2018 "I can be a bitch and write you up" comment made by Supervisor Bonetz, Ms. Gillis concedes she made a mistake in failing to carry a ward key and sign out the radios but hoped her explanation of being tired from working a double shift would excuse her conduct. There is no allegation tying Supervisor Bonetz's comment to intentional race or sex-based discrimination. Similarly, the December 8, 2018 incident regarding Ms. Gillis's intention of making a shift change and Supervisor Bonetz's comment she "will make [Ms. Gillis] pay for it on the 3-to-11 shift" if Ms. Gillis made the change is not tied to her race or gender.[74] Supervisor Galen's denial of Ms. Gillis's requested time off on January 8, 2019 suffers the same pleading deficiencies. We cannot infer Supervisor Galen's conduct is connected to a race or sex-based animus based on the allegations.

Ms. Gillis also fails to allege facts to support the other elements of a hostile work environment claim—severe or pervasive discrimination, the discrimination detrimentally affected her, the discrimination would detrimentally affect a reasonable person in like circumstances, and

respondeat superior liability. We dismiss Ms. Gillis's hostile work environment claim with leave to amend if she is able to do so in good faith.

### C.  Ms. Gillis fails to state a claim for Title VII retaliation based on race and sex.

Another form of discrimination prohibited by Title VII is retaliation. It is unlawful for an employer to retaliate against an employee "because [she] has opposed any practice made an unlawful employment practice ..., or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."[75]

To state a claim for retaliation under Title VII, Ms. Gillis must allege: (1) she engaged in activity protected by Title VII; (2) the Hospital took an adverse action against her; and (3) a causal link between her protected activity and the Hospital's adverse action.[76]

Construing Ms. Gillis's retaliation claim liberally, she engaged in protected activity by: (1) complaining to the State Employee Assistance Program sometime after the September 27, 2018 "sex worker" comment by Supervisor Bonetz; (2) complaining to the State Employee Assistance Program after the December 8, 2018 scheduling comments by Supervisor Bonetz; (3) complaining about Supervisor Bonetz to Supervisor Ellison on December 13, 2018; and (4) filing an "official" report with Debbie Isenhart on January 4, 2019. The Hospital terminated Ms. Gillis's employment on January 10, 2019.

Assuming Ms. Gillis engaged in protected activity and suffered an adverse employment action, the first and second elements of a Title VII retaliation claim, she fails to allege facts causally linking her protected activity and her termination. Retaliation under Title VII "must be proved according to traditional principles of but-for causation."[77]Although Ms. Gillis need not prove her claim at the motion to dismiss stage, she is required to plead facts from which we can plausibly infer her protected activity is the but-for cause of her termination. She does not allege Supervisor

Bonetz, Supervisor Galen, or Supervisor Ellison decided to terminate her. She does not allege a decisionmaker knew about her complaints to the State Employee Assistance Program or Ms. Isenhart. There are no allegations suggesting an inconsistency between the reason for her termination ("deliberate concealment and/or misrepresentation of information in the answering of questions during an official investigation") and her complaints. In short, there is nothing connecting Ms. Gillis's complaints about Supervisor Bonetz, or any supervisor, to her termination.

Ms. Gillis must plead facts plausibly supporting an inference of a causal connection between her complaints about Supervisor Bonetz and her termination. Even under the liberal construction applied to pro se pleadings, there are no facts from which we can infer her complaints are causally related to her termination. We dismiss her retaliation claim with leave to amend if she can do so in good faith.

### III. Conclusion

We grant in part and deny in part the Hospital's motion to dismiss. We dismiss with prejudice all claims asserted against the Hospital under the Pennsylvania Human Relations Act as the Hospital, as a facility under the Pennsylvania's Department of Human Services, has Eleventh Amendment immunity against claims asserted against it in federal court. We dismiss the Title VII hostile work environment and retaliation without prejudice to allow Ms. Gillis to timely amend her Complaint to allege facts plausibly stating such claims if she can do so in good faith.

Ms. Gillis presently pleads a Title VII disparate treatment claim based only on the January 10, 2019 termination.

---

[1] Ms. Gillis filed an "exhibit" to her Complaint the day after she filed the Complaint appearing to be an "Employment Discrimination Questionnaire" filed with the Pennsylvania Human Relations Commission (ECF Doc. No. 5). We liberally construe both documents as the Complaint.

12

[2] ECF Doc. No. 5 at 5, ¶ 5.

[3] *Id.* at 21.

[4] *Id.* at 15. Although not pleaded, we infer from Ms. Gillis's filings her position is covered by a recognized bargaining unit under a collective bargaining agreement between the Pennsylvania State Corrections Officers Association and the Commonwealth. *Id.* at 21.

[5] *Id.* at 15.

[6] *Id.*

[7] *Id.*

[8] ECF Doc. No. 2 at 7.

[9] ECF Doc. No. 2 at 7; ECF Doc. No. 5 at 21.

[10] *Id.*

[11] ECF Doc. No. 2 at 7.

[12] *Id.*

[13] ECF Doc. No. 5 at 15.

[14] *Id.* at 16.

[15] *Id.*

[16] ECF Doc. No. 5 at 11, 16.

[17] *Id.* at 11.

[18] *Id.* at 16.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.* at 16–17.

[23] *Id.* at 17.

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.* at 18.

[28] *Id.* at 11, 17–18.

[29] *Id.*

[30] *Id.* at 17.

[31] *Id.* at 11.

[32] *Id.* at 12.

[33] *Id.* at 5, 11–12, 18.

[34] *Id.* at 18–19.

[35] *Id.* at 19.

[36] *Id.*

[37] *Id.* at 21.

[38] *Id.*

[39] *Id.*

[40] *Id.* at 19. Ms. Isenhart is identified as the person in Harrisburg "who handles workplace violence cases" for Ms. Gillis's "department." *Id.*

[41] *Id.*

[42] *Id.* at 12.

[43] *Id.*

[44] ECF Doc. No. 2 at 7; ECF Doc. No. 5 at 5, 21.

[45] ECF Doc. No. 2 at 7–8; ECF Doc. No. 5 at 6.

[46] ECF Doc. No. 5.

[47] ECF Doc. No. 2 at 9, § III.A.

[48] *Id.* at 9, § III.B.; ECF Doc. No. 2–1.

[49] ECF Doc. No. 16.

[50] *Papp v. Fore-Kast Sales Co., Inc.*, 842 F.3d 805, 811 (3d Cir. 2016).

[51] *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n. 3 (3d Cir. 2006)).

[52] *Id.*

[53] *Id.*

[54] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Koslow v. Commw. of Pa.*, 302 F.3d 161, 167–68 (3d Cir. 2002). The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State." U.S. CONST. amend. XI.

[55] 42 Pa. Cons. Stat. Ann. § 8521; *Dieffenbach v. Dep't of Revenue*, 490 F. App'x 433, 435 (3d Cir. 2012); *Afrasiabipour v. Pa. Dep't of Transp.*, 469 F. Supp. 3d 372, 383–84 (E.D. Pa. 2020).

[56] *Matthews v. Norristown State Hosp.*, 528 F. App'x 115, 118 (3d Cir. 2013) (per curiam) (citing 71 Pa. Stat. § 61).

[57] *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254–55 (3d Cir. 2010). At the time of the *Betts* decision, the Department of Human Services was known as the Department of Public Welfare. In 2014, the name of the department changed from the Department of Public Welfare to the Department of Human Services. 62 Pa. Stat. §103(a) ("The Department of Public Welfare shall be known as the Department of Human Services.").

[58] *Pennhurst State Sch. & Hosp.*, 465 U.S. at 100 ("[I]n the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.")

[59] While Pennsylvania's General Assembly retained its immunity from suit in *federal court*, it waived its immunity from suit under the Pennsylvania Human Relations Act in *state court. See e.g.*, *Woodring v. Republican Caucus of Pa. House of Representatives*, No. 18-1158, 2019 WL 1383633, at * 8 (M.D. Pa. Mar. 27, 2019); *Holt v. Pennsylvania*, No. 17-2511, 2018 WL 2363535, at * 6 (E.D. Pa. May 24, 2018).

[60] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Leave to amend a complaint should be "freely give[n] … when justice so requires." Fed. R. Civ. P. 15(a)(2). We have discretion to deny a request to amend a complaint "if it is apparent from the record … (2) the amendment

[72] *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quoting *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)).

[73] *Compare* ECF Doc. No. 2 at 7 with ECF Doc. No. 5 at 15.

[74] Ms. Gillis alleges these comments are race and sex based because Mr. McCullough "has never been threaten[ed] by [Supervisor Bonetz] regarding his overtime or job or been threaten[ed] that he will be written up." ECF Doc. No. 5 at 12. This allegation seems to go to a disparate treatment theory. Ms. Gillis does not allege Mr. McCullough committed the same infraction but did not suffer harassment in the form of a threatened "write up" or he attempted a shift change and did not receive harassing comments by Supervisor Bonetz.

[75] 42 U.S.C. § 2000e–3(a).

[76] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

[77] *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).